Glesenkamp, Appellant, *v.* City of Pittsburgh et al.

Argued October 9, 1935. Before FRAZER, C. J., KEP-
HART, SCHAFFER, MAXEY, DREW, LINN and BARNES, JJ.

*Benjamin L. Steinberg,* for appellant.

*Anne X. Alpern,* with her *Wm. D. Grimes,* for appel-
lee.

Opinion by Mr. Justice Maxey, November 25, 1935:

Louis Glesenkamp was appointed paymaster in the Department of the Mayor of Pittsburgh, on July 1, 1932. Prior thereto he had passed an examination in the noncompetitive class, as provided in the Civil Service Act of May 23, 1907, P. L. 206, governing cities of the second class, and the rules and regulations of the Civil Service Commission of the City of Pittsburgh.

On March 19, 1934, Mr. Glesenkamp was served with a notice issued by the Civil Service Commission, of a hearing to be held by that body on March 26, 1934, in connection with a proposed amendment of its rules and the reclassification thereof by adding to the exempt class in the office of the Mayor the positions of paymaster and paymaster's clerk, theretofore in the noncompetitive class. This notice was properly posted.

Glesenkamp filed a written protest to the proposed reclassification of the position of paymaster by the commissioners. On March 26, 1934, a public hearing was held by the Civil Service Commissioners. Glesenkamp was represented by counsel. Testimony was presented in support of the proposed change of the position of paymaster, from the noncompetitive to the exempt class. The then city solicitor urged the need for the reclassification on the ground that the city depositories had informed the Mayor that they could no longer fill the pay envelopes for the city payroll without charge. There was testimony that the practice had been in the past for the paymaster to make up the payroll for the fifty-five hundred city employees, and for the banks to place the money in the envelopes. The paymaster's activities were largely devoted to the distribution of the envelopes filled by the banks.

The proposed change of the paymaster's position to the exempt class was for the purpose of affording an opportunity for the selection of a paymaster sufficiently skilled in the duties of filling the envelopes in the limited time available.

On April 4, 1934, the commission published its unanimous opinion that the paymaster's position be changed from the noncompetitive class to the exempt class. Specific reasons were given by the secretary of the commission, as follows: "It was the opinion of the commission that they are endowed with broad discretionary powers in changing a position from one class to another under the Act of 1907, when the position in question is deemed to be such that selection by competitive and noncompetitive examinations is found by the Civil Service Commission to be impracticable. It appears to the commission that adequate examinations cannot be prescribed so as to accurately measure the skill, training and experience required to make up and distribute the payroll, and it further appears to the commission that the new position, as intended to be set up, is such a position that it will be necessary to experiment with the individuals who might hold the position until such a time as some individual is found who possesses the required training and mathematical exactness. It is further the opinion of the commission that responsibility for selection of said personnel should rest upon the appointing officer specifically."

By a letter dated April 9, 1934, the Mayor, William N. McNair, dismissed Glesenkamp from his position, without assigning reasons. No appeal to the Civil Service Commission was taken by Glesenkamp, either from the reclassification of his position, or by reason of his dismissal.

On April 19, 1934, Glesenkamp caused an alternative writ of mandamus to be issued to the Civil Service Commissioners and the Mayor. The court quashed that writ. This appeal followed.

The Civil Service Act relating to cities of the second class, which is the Act of May 23, 1907, P. L. 206, divides the offices and positions in the classified services into four classes: (1) exempt, (2) competitive, (3) noncompetitive, and (4) labor. Only competitive and noncompetitive classes are within the protection of the

act. Employees in the classes designated "exempt" and "labor" are subject to dismissal at the will of the executive officer or director of the appropriate department. Dismissals of employees in the competitive and noncompetitive classes cannot be made unless the dismissing officer complies with the provisions of the Act of Assembly and the rules of the commission. Paragraph 3 of section 22 of the act provides that ". . . . no office or position shall be deemed to be in the exempt class unless it is specifically named in such class in the rules; and the reason for each such exemption shall be stated separately, in the annual reports of the said commission."

It is conceded that the Civil Service Commission can transfer a position which was in the competitive or noncompetitive class to the exempt class only after a hearing at which parties interested may appear, and the act of the commission in making the transfer must be based on adequate reasons.

The court below found that the commission complied with all legal requirements in making the transfer of the position in question, that the commission decided on adequate grounds that the filling of the position of city paymaster by noncompetitive examination was impracticable and therefore placed it in the exempt class. The court stated: "We do not think the record discloses that the commission abused its discretion in reclassifying this position" and that therefore relator's position was insufficient in law.

In this there is no error. In passing on the actions of the Civil Service Commission in matters like that now before us, courts consider not the wisdom of the act but the power of the actor and the method of its exercise. Much of appellant's argument is based upon the theory that the relator was discharged and that this was illegal because it was not made "for just cause," as the Civil Service Law requires. It is true that the action of the commission resulted in relator's losing his job, but that

followed only as an incident of the reclassification of relator's position. Relator had a legally protected right to his job only as long as that job was within the "competitive" and "noncompetitive" classes. Every holder of a job within those classes holds it at the risk of having his position or job transferred by appropriate proceedings, to the "exempt" or "labor" classes. There is no doubt that the Civil Service Commission had the power to reclassify the position relator held. The relator attacks the good faith of the commission in doing so. He claims the reclassification was a mere subterfuge to deprive him of his job. If there was bad faith in this matter the persons who exhibited it were the Mayor of Pittsburgh, the members of the Civil Service Commission, and the then city solicitor. The orderly administration of government requires that courts assume that persons holding responsible public positions act in good faith, until the contrary is clearly shown. As this court said in Com. v. Philadelphia, 232 Pa. 5, 81 A. 59, "we start with the presumption of good faith in the performance of public duties on the part of the commission."

Relator cites Truitt v. Philadelphia, 221 Pa. 331, 70 A. 757, as "decisive of the particular question involved" here. In that case a "superintendent of squares" was notified by the director of public safety of his "dismissal . . . for the betterment of the service." This court held that this official could not be dismissed until "just cause" was made to appear in the manner prescribed by the Civil Service Act. That there is an important legal difference between the act complained of in the above case and the act complained of in the instant case is indicated by a quotation from appellant's brief in the latter case, reading as follows: "The ultimate thing desired by the relator was the preservation of the status of the position of paymaster in the noncompetitive class and it, therefore, included the demand for all necessary incidental acts, to wit, his individual right to the position." Had the Mayor removed the relator summarily

and without showing just cause, the relator's right to the writ asked for would be clear. But the Mayor removed the relator summarily only after the status of relator's position had been changed by the Civil Service Commission. Relator in his petition for a writ of alternative mandamus asked the court to "set aside the proceedings of the Civil Service Commission in the reclassification of the position of paymaster, department of mayor, from the noncompetitive class to the exempt class." This a court cannot do except in a clear case. In Com. v. Philadelphia (supra), we said, after reviewing the proceedings in a case of an alleged improper removal of a public officer who had invoked the protection of the Civil Service Act: "It may be that different minds might reach opposite conclusions from the evidence presented. But it has been frequently held that findings of fact will not be reversed on this ground unless there is manifest error: Plankinton's Estate, 212 Pa. 235, 61 A. 888."

The court below said: "We do not assume that the commission was either dishonorably or improperly motivated in the action here taken, changing this position from the noncompetitive to the exempt classification. The minutes [of the hearing] justify the reclassification."

In this we find no such manifest error as calls for a reversal by us.

As to whether the relator had standing to maintain his right to an action in mandamus without first filing an appeal to the Civil Service Commission, it is not necessary for us here to decide.

The decree is affirmed at appellant's cost.