[No. 25931. *En Banc.* June 30, 1936.]

THE STATE OF WASHINGTON, *on the Relation of K. W. Jarrett, Respondent,* v. THE CITY OF SEATTLE *et al., Appellants.*[1]

*A. C. Van Soelen* and *Glen E. Wilson,* for appellants.

*Peyser & Bailey,* for respondent.

MAIN, J.—K. W. Jarrett brought this action in mandamus in the superior court, seeking to be reinstated under civil service rules and regulations as truck driver in the streets and sewers department of the city of Seattle. Relief was granted by the trial court and judgment entered in accordance with the findings

[1]Reported in 58 P. (2d) 1212.

and conclusions. The city of Seattle and certain officers who were parties to the action have appealed. The case is here on the facts as found by the trial court, since no statement of facts or bill of exceptions has been brought to this court.

Subdivision 40 of § 18 of Art. IV of the city charter provides that the city council shall have power, by ordinance and not otherwise, to ordain, establish, modify and abrogate from time to time, as the needs of the city shall require, all proper offices, and to provide for the conduct of such offices. Section 1 of Art. XVI of the charter provides that the mayor of the city shall appoint three persons who shall constitute and be known as the civil service commission. Section 3 of this article provides that the civil service commissioners shall classify all the offices and places of employment in the city with reference to the examinations provided for in the charter, except certain offices which are not here material. This section also provides:

"The offices and places so classified by the commission shall constitute the classified civil service of the city of Seattle; and no appointment to any such office or place shall be made except under and according to the rules hereinafter mentioned."

Among the employments classified by the civil service commission was that of "truck driver," the duties of which the city had not defined by ordinance; but the duties, as defined by the civil service commission, were as follows:

"Truck Driver — Duties — Care and operation of motor trucks, General work in connection therewith."

Another classified position under civil service was that of "laborer," the duties of which, as found by the civil service commission, were as follows:

"Laborer—Duties—General unskilled work."

During the year 1932, the city, in its streets and sewers department, operated thirty-six trucks, all of which were driven by men who had taken the examination and were classified as "truck drivers." Of these Jarrett was one. The budgets of the city for the years 1933, 1934 and 1935, as adopted by the city council, provided for truck drivers in the department of streets and sewers, as follows:

"Auto Truck Driver (15) $26,316.00."

The budgets for the years mentioned made provision for labor or laborer, as follows:

"For the year 1933, $294,681.32;
"For the year 1934, $250,935.42; and
"For the year 1935, $176,558.10."

The salary of truck driver was fixed at $146.20 per month, and that of laborer at $113.64 per month.

It will be seen that, in the budget, provision was only made for fifteen truck drivers. During the years mentioned, to-wit, 1933, 1934 and 1935, the streets and sewers department of the city operated thirty-six auto trucks, and, as found by the trial court,

"That of said 36 trucks, 15 are, and at all times have been, operated by the incumbents of the regularly created positions of auto truck driver hereinabove referred to. Seven additional trucks are, and have been, operated by regularly qualified and appointed auto truck drivers, although said positions have not been created, nor the compensation thereof fixed, by ordinance, said compensation being paid from special funds not included in the budget of said streets and sewers department. That the 14 remaining trucks, at all times have been, and now are, operated by regular Civil Service employees whose Civil Service classification is that of laborer. That the work performed by said laborers is in all respects identical with the work performed by the incumbents of the 15 positions of auto truck driver hereinabove referred to."

June 15, 1932, Jarrett was "laid off work" by the superintendent of the streets and sewers department of the city, and was returned to the eligibility list. At the time he was laid off, he was informed by the superintendent that the department was cutting down the number of truck drivers, and that he would be given employment when any positions were available. June 15, 1935, Jarrett brought the present action, not having up to that time been restored to his position as auto truck driver, though, as already seen, the city, in its streets and sewers department, had continued to use thirty-six trucks, fourteen of which were manned by drivers who were classified under civil service as laborers.

The question here is whether the city can operate fourteen of its trucks by civil service employees classified as laborers when there are on the eligible list men classified under civil service as auto truck drivers.

The nature of the work done, and not the name given the position, is the controlling feature and determines the rights of eligibles under civil service. *State ex rel. Wettrick v. Seattle,* 115 Wash. 548, 197 Pac. 782; *Petley v. Tacoma,* 127 Wash. 459, 221 Pac. 579; *Allard v. Tacoma,* 176 Wash. 441, 29 P. (2d) 698.

Inasmuch as the streets and sewers department operated thirty-six trucks at all times subsequent to the time that Jarrett was laid off and prior to the time of bringing this action, fourteen of these being operated by civil service employees classified as laborers, and the work that they did, as found by the trial court, being "in all respects identical with the work performed by the incumbents of the 15 positions of auto truck driver" that were classified as such, it necessarily follows, under the rule stated, which is supported by the authorities cited, that there were

thirty-six positions of auto truck driver, and that Jarrett was entitled to one of them.

It is true, as held in *State ex rel. Voris v. Seattle,* 74 Wash. 199, 133 Pac. 11, 4 A. L. R. 198, that the city council alone has the right to create offices and abolish them, or it may, in the interest of economy and efficiency, combine the work of several employees so that their duties may be performed by a lesser number of men; but there is no question here concerning the abolishment of a position, the consolidation of one or more positions, or a reduction in force.

It is also true, as held in *State ex rel. Mattice v. Seattle,* 173 Wash. 42, 21 P. (2d) 288, that the civil service commission has no power to create positions, and that its authority is limited to classification thereof. In this case, the civil service commission has not attempted to create a position. Thirty-six positions of auto truck driver remain, because the work of each of those truck drivers is identically the same whether the truck be manned by one classified as "auto truck driver" or "laborer."

The trial court, in its judgment, directed that a writ of mandate would issue requiring that Jarrett be placed in one of the positions of truck driver in the streets and sewers department of the city, not filled by a duly qualified truck driver under civil service rules and regulations, or, in the alternative, to abolish

". . . said positions of truck driver not now filled by duly qualified truck drivers under civil service rules and regulations,"

and to refrain from operating the said fourteen trucks by employees of any other classification, except that of truck driver.

This judgment followed naturally and properly from the facts in the case and the law applicable thereto.

The city is given the alternative to man the trucks by drivers made eligible by passing the civil service examination for such drivers, or the city, if it sees fit, may cease operating trucks by those who do not have the civil service rating of truck driver. Even though the motive of the city council was that of economy, if its position was sustained in this case, the civil service provisions of the city charter would not mean very much.

The judgment will be affirmed.

MILLARD, C. J., MITCHELL, TOLMAN, BEALS, BLAKE, STEINERT, and GERAGHTY, JJ., concur.

HOLCOMB, J., concurs in the result.