[No. 27407. Department One. July 13, 1939.]

THE STATE OF WASHINGTON, *on the relation of* GEORGE E. COOPER *et al., Respondents,* v. THE CITY OF SEATTLE *et al., Appellants.*[1]

[1] Reported in 92 P. (2d) 249.

*A. C. Van Soelen, J. Ambler Newton* and *Bundy & Swale,* for appellants.

*Thomas J. L. Kennedy* and *Emil G. Gustavson,* for respondents.

JEFFERS, J.—Relators, George E. Cooper, Seeley H. Hayes, Benjamin F. Haney, and Ward G. Bailey, brought this action, seeking a writ of mandamus to compel David E. Lockwood, Henry Elliott, Jr., and Frank W. Brewster, constituting the civil service commission of the city of Seattle, to correct the commissioner's register of eligibles for the position of lineman's helper in the light department of the city, also its inverse seniority list and reinstatement register, and to compel J. D. Ross and W. J. McKeen, superintendent of lighting and acting superintendent of lighting, respectively, and the city of Seattle, to forthwith reinstate and restore relators to the duty of lineman's helper in the light department, from which position they had been laid off on October 21, 1937, and for salary accruing to such position from October 21, 1937, to the date of reinstatement.

Interveners were permitted to file a complaint in intervention and join with respondents in resisting the claims of relators, alleging, in support of their right so to do, that they were then employed as linemen's helpers in the light department, and that, if relators prevailed, they would be deprived of their rights as such employees.

The cause came on for hearing by the court on the affidavit and application of relators, the answer of respondents, and complaint of interveners, and the court thereafter entered findings, conclusions, and judgment in favor of relators, wherein it was ordered that relators be reinstated and restored to work in the position of lineman's helper in the light department; that each

of relators be awarded a judgment against the city for back pay, at the rate of $144.48 per month, from October 21, 1937, and continuing until the date of reinstatement; that the rights of relators to such employment and salary and to seniority in such position are superior to the rights of any and all persons who have not qualified on examination for, and been certified and appointed to, such position; and that the commission be required to correct its records in accordance with relators' application. Motion for new trial was made by respondent city, its officers, the commission, and interveners, which motion was denied. This appeal followed.

Hereinafter, relators will be referred to as relators, and respondents and interveners as appellants.

The facts as found by the trial court, and which the evidence supports, may be summarized as follows: The city of Seattle was at all times herein mentioned functioning under a city charter. Appellants J. D. Ross and W. J. McKeen were, respectively, the duly appointed and qualified superintendent and acting superintendent of lighting, and appellants Lockwood, Elliott, and Brewster constituted the civil service commission of appellant city. Relators were at all times classified linemen's helpers (H-1-3) in the classified (civil) service of the city, and until the lay-off order were employed in such capacity in the city's department, under completed appointment thereto. Pursuant to authority granted by the city charter, the commission had enacted, and in December, 1930, reenacted, effective as of December 31, 1930, §§ 2 and 3, of rule I, which rule was, and still is, in effect, and so far as material provides:

"Rule I—Classification.

"Section 1. Extent of Service. . . .

"Sec. 2. Classification. All places of employment in the classified service are hereby grouped in classes ac-

cording to the general character of work involved.
. . .

"Sec. 3. Class Specifications. The scope and limits of the various classes of the classified service are hereby defined as follows: . . .

"Class 'H'—Skilled Labor Service: Service requiring manual skill or knowledge of a trade, craft or useful art, or special mechanical skill, or supervision of such work.

"Class 'I'—Labor Service: Service involving specialized or general manual labor where little or no manual skill is required; also supervision of the work of such employees. . . ."

The commission amended and enacted § 5, rule X, effective as of December 30, 1935, relating to lay-off; § 6, rule X, effective as of November 22, 1932, relating to reinstatement registers; and § 7, rule X, effective as of February 5, 1936, relating to order of reinstatement after separation. Section 5, rule X, provides in part as follows:

"In reduction in force in a given position in a department, those who have no civil service standing shall first be laid off; then probationary employees; then regular employees shall be laid off in the order of their length of service, the employee with the least service in that department under his last examination for the position being first laid off . . ."

Section 7, rule X, provides in part as follows:

"Reinstatement shall be made on the basis of length of service, the person with greatest service credit being first reinstated . . ."

Seattle ordinance No. 66979, entitled:

"An Ordinance relating to the positions, grades and compensations of the officers and employees of various departments of the city government of the city of Seattle . . . ,"

was passed by the city council December 14, 1936, and approved by the mayor December 16, 1936, and estab-

lished the offices, positions, and places of employment, and the compensation attached thereto, for the year 1937. This ordinance established in the department the position of lineman's helper (H-1-3), to which attached a compensation of $6.88 per day, and the job of poleman (I-1-3), to which attached the respective salaries of $6.05, $6.21 and $6.49 per day.

Ordinance No. 67842, relating to grades, positions, and compensations of officers and employees of the city, was passed by the city council November 15, 1937, and approved by the mayor November 17, 1937, and this ordinance again established in the department, for the year 1938, the position of lineman's helper (H-1-3), to which attached compensation of $6.88 per day. No mention of the job of poleman was in any manner made in this ordinance.

Subsequently, the city council passed ordinance No. 68048, entitled:

"An ordinance relating to the department of lighting, and consolidating and combining, effective January 1, 1938, the existing positions of lineman's helper and poleman therein,"

·which ordinance was approved by the mayor February 25, 1938.

For many years, the duties attached to the position of lineman's helper have consisted generally in assisting linemen in placing cross-arms and stringing wires on light and power line construction work, and other work of similar character, which duties were defined by the commission as being within class H, that is, "skilled labor"; and at all times the duties attached to the position of poleman have been the common labor type, such as peeling poles, digging pole holes, and erecting poles, which duties have at all times, up to February 3, 1937, been defined by the commission as being within class I, that is, "labor service," involving

special or general manual labor where little or no manual skill is required.

No examination for an eligible list for the job of poleman has been held for approximately ten years, and the job has been practically obsolete for fifteen years; but, in default of polemen's work, numerous polemen, who had not been qualified upon examination for, or certified to, the position of lineman's helper, have been, by the department head, employed on work properly assignable to linemen's helpers, in order to justify the keeping of such polemen on the payroll. The commission held an examination for the creation of an eligible list for lineman's helper in the years 1932 and 1935, but only two polemen qualified on such examination for the position of lineman's helper—intervener Chavis and one Bartholmew Sechser, neither of whom has ever been certified for, or appointed to, such position.

On February 3, 1937, the commission, by motion, attempted to abolish the job of poleman and impose the duties thereof on the position of lineman's helper, without, however, attempting to confer upon polemen seniority as lineman's helper based on the term of service as poleman. On the basis of such motion, the secretary of the commission, without notice to, or knowledge of, relators, on or about October 7, 1937, prepared and furnished the department a purported lineman's helper inverse seniority list, that is, lawful appointments to, incumbencies of, and seniority ratings in, such position, effective as of October 15, 1937. There were included in this list, and classified as linemen's helpers, approximately forty polemen (I-1-3) who had not qualified on examination for, or been certified to, the position of lineman's helper. These polemen were accorded seniority as linemen's helpers, based on their respective terms of service as polemen.

Lineman's helper John D. Wilson resigned in 1930,

and on June 26, 1930, he was permitted to withdraw his resignation and was placed on the reinstatement register. Sam H. Klinefelter resigned January 22, 1931, and on June 24, 1931, the commission permitted him to withdraw his resignation, and he was placed on the reinstatement register. In preparing the inverse seniority list, the commission credited Wilson and Klinefelter with service before their resignations, and by so doing gave them a senior rating over relators.

It became necessary for the city to effect a reduction of the force in the light department, due to a curtailment of construction and other available light funds and lack of work for polemen, and the city was faced with the necessity of making a lay-off order. The head of the department, for purposes of lay-off, assumed the purported inverse seniority list was valid and correct. On October 21, 1937, by oral notice, confirmed by notice of separation filed with the commission the following day, the head of the department, on the basis of the respective seniorities as lineman's helper, as shown on such list, separated relators from their jobs, and laid them off, for lack of funds. At the time of such lay-off, the department, on the assumption that the inverse seniority list was correct, retained as linemen's helpers approximately forty polemen, shown on the list as senior to relators, and many of such polemen so retained are now and have been employed by the department in the performance of duties attached to the position of lineman's helper. The number of polemen so employed is such as to entitle all relators to their claimed right of reinstatement.

At the time of the lay-off, the compensation of lineman's helper, fixed by ordinance, was $144.48 per month, computed at the rate of $6.88 per day. Under the rules, usage, and custom obtaining in the lighting department, 168 working hours, or twenty-one days,

constitutes a month. During the time of lay-off, George Cooper had earned, in private employment, $36; Seeley H. Hayes, $1,010.96; Benjamin F. Haney, $185.40; and Ward G. Bailey, $660. An appeal from the lay-off order made by the department was duly filed with the commission, and a demand made that the commission hear the same. The commission requested an opinion on the matter from the corporation counsel, which opinion was furnished and advised the commission that the composite inverse seniority list was null and void. A hearing was had on January 20, 1938, but no correction was ever made in the seniority list, nor was any relief granted relators, but all their demands were refused.

The judgment entered herein granted relators the relief prayed for, except that it gave seniority rights to appellants Wilson and Klinefelter over relators, and also allowed appellant city to offset against the back pay the amounts hereinabove set forth, earned by relators in private employment.

Appellants contend the court erred in failing to give effect to the action of the civil service commission in reclassifying the position of poleman, and consolidating the duties with those of lineman's helper, together with the action of the city council in approving such action and in enacting ordinance No. 67842 in conformity therewith.

The action of the civil service commission of February 3, 1937, whereby it attempted, by motion, to reclassify and consolidate the duties of poleman and lineman's helper, was apparently taken for the reason that the commission was of the opinion that the ground duties of the two positions had for some years been the same. The trial court found that the duties on the ground attached to the two positions were not the same, and there is ample testimony to sustain such finding.

But, regardless of the reason assigned, the commission had no authority, under its rules, to consolidate positions under the civil service. It could reclassify positions, but the city council alone had the authority, under the charter, to abolish or consolidate positions. *State ex rel. Raines v. Seattle,* 134 Wash. 360, 235 Pac. 968; *State ex rel. Buchanan v. Seattle,* 171 Wash. 113, 18 P. (2d) 3; *State ex rel. Jarrett v. Seattle,* 186 Wash. 541, 58 P. (2d) 1212. In the latter case, we stated that the city council alone has the right to create offices and abolish them, and also that the civil service commission has no power to create positions, and that the authority of the commission is limited to classification of positions.

It follows, then, that the action of the commission, by motion to consolidate the positions of poleman and lineman's helper, and its action pursuant to the motion so passed, in the preparation of what is termed the "lineman's helper inverse seniority list," which list purported to set forth lawful appointments to, incumbencies of, and seniority ratings in, the position of lineman's helper, and wherein polemen were classified as linemen's helpers and accorded seniority rights as linemen's helpers, according to the length of service as polemen, regardless of whether or not such poleman had taken the examination for the position of lineman's helper, and had been certified and appointed to the position of lineman's helper, was null and void. It also follows that the action of the city council in adopting the report of the budget committee, which committee had, in a report to the council, recommended that the action of the commission be approved, was null and void, in so far as any consolidation of the positions of poleman and lineman's helper was concerned. Such result could only be accomplished by ordinance. City charter, article IV, § 18, subd. 40.

Such action by the commission and the council was also in violation of § 6, article XVI of the charter, which provides in part that all applicants for offices or places in the classified service shall be subject to examination.

The order of separation was contrary to § 5, rule X, of the civil service rules, which provides in part that the employee with the least service in that department under his last examination for the position shall first be laid off, in that some forty polemen who had never taken the examination for lineman's helper were retained and given seniority rights in such position, while relators were laid off.

We think the effect of salary ordinance No. 67842, for the year 1938, wherein no provision was made for salaries of polemen, was to abolish the position of poleman, rather than to consolidate it with the position of lineman's helper. This we think is the reasonable view of the intention of the ordinance, as the testimony shows there had been practically no work for polemen, and as the ordinance contains no indication of an intent to consolidate. Positions may be abolished indirectly, as well as directly, as was held in *State ex rel. Burris v. Seattle*, 82 Wash. 464, 144 Pac. 695, wherein we stated:

"A position created by statute can be abolished indirectly as well as directly, and this position was indirectly abolished by the change in the system which rendered the services required thereby unnecessary, *and by the failure to make an appropriation to pay for the services.*" (Italics ours.)

It is contended by appellants that the effect of ordinance No. 67842, as supplemented by ordinance No. 68048, was to consolidate the positions of poleman and lineman's helper, and, the work on the ground being the same, that polemen should therefore be entitled to

be classed as linemen's helpers and given seniority rights based upon their service as polemen. Assuming, but not deciding, that the effect of the ordinances was to consolidate the two positions, still the council could not, by the passage of such ordinances, classify as linemen's helpers polemen who had not taken the examination for lineman's helper, and give them seniority rights over relators, who had taken the examination as lineman's helper and were working in that position.

In the first place, the trial court found the duties of the two positions were not the same, and with that finding we agree. So we think it follows that, while the council could, by ordinance, consolidate the position of poleman with that of lineman's helper, the position of lineman's helper had attached to it different and additional duties than were attached to the position of poleman. That being true, polemen who had not taken the examination for lineman's helper, and been certified and appointed to that position, could not be lawfully given seniority rights over lawfully qualified linemen's helpers, working in that capacity. Such action would be contrary to the civil service rules and contrary to our decisions in *State ex rel. Wettrick v. Seattle,* 115 Wash. 548, 197 Pac. 782; *State ex rel. Jarrett v. Seattle, supra;* and *Haga v. Seattle,* 195 Wash. 226, 80 P. (2d) 821.

■ It is next contended that this court is bound by the action of the commission in overruling the protest of relators and sustaining the lay-off; it being further contended that, in so doing, the commission adopted § 5, rule X, *supra,* and that, this rule literally construed not meeting the situation, the commission placed an interpretation on the rule, which it claims is reasonable and justifies the lay-off, based on the lineman's helper inverse seniority list.

We think the commission, under the rule announced

in *State ex rel. Ausburn v. Seattle,* 190 Wash. 222, 67 P. (2d) 913, 111 A. L. R. 418, had the right to review the action of the department in this case, but we are also of the opinion that the action of the commission in this case was unreasonable and arbitrary, and not binding on this court. *State ex rel. Jackson v. Seattle,* 177 Wash. 646, 32 P. (2d) 1065.

The judgment is affirmed.

BLAKE, C. J., MAIN, STEINERT, and ROBINSON, JJ., concur.

