## Davis v. City of Scranton et al.

*O'Malley, Harris, Harris & Warren,* for plaintiff.

*James W. McNulty, David J. Reedy, Jr.,* and *John Scott,* for defendants.

HOBAN, J., December 18, 1946.—This is a mandamus action to restore plaintiff to the grade and pay of captain of police in the classified civil service of the City of Scranton, a city of the second class A. The petition alleged that plaintiff was demoted from the grade of captain of police to the grade of sergeant without any trial or the filing of charges, contrary to law. The alternative writ issued, a motion to quash was made and dismissed, and a return and amended return were filed. Plaintiff demurs to the return as amended.

A demurrer admits the truth of all facts well pleaded: Salak v. St. Mary's Greek Catholic Church Society et al., 317 Pa. 39.

The relevant facts so pleaded are as follows:

On March 3, 1926, plaintiff was commissioned a reserve patrolman on the police force of the City of

Scranton from a civil service commission eligibility list on which plaintiff was number 10. Plaintiff received the fourth appointment from this list.

On March 22, 1926, plaintiff was appointed a regular patrolman on the police force of the City of Scranton from a civil service commission eligibility list on which plaintiff was number two, but was the 13th reserve patrolman on this list to be appointed a regular patrolman.

Thereafter, plaintiff proceeded through various grades on the police force and finally was commissioned captain of police on February 15, 1938, continuing to serve in that capacity until March 15, 1946.

On March 15, 1946, a letter signed by the superintendent of police and the director of public safety was handed to plaintiff. The letter is as follows:

"This is to advise, that effective March 16, 1946, you are demoted to the rank of sergeant, replacing Sgt. Chester Cimini, in West Scranton."

Plaintiff made appropriate protests to preserve his legal position to no avail, hence this action.

The position of the city and other defendants is that the original commission of plaintiff as a reserve patrolman and his subsequent appointment as a regular patrolman were made in violation of the civil service law, and of the regulations of the municipal civil service commission, hence void. Therefore, all subsequent promotions and appointments, although regular in form, were likewise void because plaintiff had no civil service status. Being without civil service status, he has no standing to demand remedial action from any of the city's officers or from the civil service commission. The city further avers that the procedure for the removal or dismissal of policemen or firemen as prescribed by the Act of April 11, 1931, P. L. 38, as amended, 53 PS §10801, cannot be applied in the case of a police captain in the City of Scranton, for the reason that there are not three members of the police force

of equal or superior rank available to constitute a court of trial or inquiry.

No question is raised as to the quality of service rendered by plaintiff in his career on the police force, nor of his fitness for the position of captain of police.

It is obvious that the removal of plaintiff from his position as captain of police, without a statement of charges or an opportunity of defending his interest before a court of trial or inquiry, was in plain violation of the Act of April 11, 1931, P. L. 38, and its amendments, and if plaintiff has valid status as a police officer under the requirements of the municipal civil service law applicable, he should be restored to his position, at no loss, financial or otherwise, to himself. The mere fact that there were not sufficient officers of his own or higher grade in the bureau of police to constitute a court composed of at least three persons cannot defeat the other essential purposes of the legislation. It is the clear intent of the Act of 1931 and its amendments to prohibit removals from an office validly obtained in the police or fire systems, in cities of the second class A, without just cause. If a full tribunal could not be obtained, the law would certainly sanction a trial or inquiry properly conducted by the available officers, with the procedure to be conducted in conformity with the act and under the safeguards provided by it.

The appointment of police officers is regulated by the provisions of the Act of March 7, 1901, P. L. 20, as amended, 53 PS §8451, et sec. and the Civil Service Act of May 23, 1907, P. L. 206, as amended, 53 PS §9361, et sec. The cities subject to the act operate the system through civil service commissions, which have authority to prescribe rules and regulations for the conduct of their business. Members of the classified civil service must obtain their original appointments through competitive examinations. Thereafter promotions through the various grades in any one classification are required to be based on merit and subject to

such tests as the civil service commission provides to determine the qualifications of the employe for advancement within the classification. In the City of Scranton the commission has graded the appointments in the bureau of police, the two with which we are concerned here being graded as follows: Reserve patrolman, grade A and regular patrolman, Grade 1, grade A being the lowest grade in the class.

As pointed out by Judge Eagen, of this court, in Schneider v. Snowdon, Mayor, et al., 45 Lack. 241, a reserve policeman in grade A is in the police service just as much as a regular patrolman in grade 1 or any higher grade. Hence, an advance in grade from grade A to grade 1 is a promotion rather than an original appointment, and the pertinent provisions of the law and the regulations of the commission as to promotions govern an appointment to grade 1.

Defendants' return challenges the legality of the appointment of plaintiff as a reserve patrolman, grade A, the only reason for such challenge lying in the belief of defendants that it would be a mathematical impossibility to have an individual who is no. 10 on the eligible list receive a fourth appointment from that list without violating the law. Section 14 of the Civil Service Act provides that the appointing authority must be offered a list of the three highest names on the eligible list and the initial appointment must be made from one of the three names so submitted. Having selected one of the names, the remaining two must again be on the three names submitted for the next appointment, and so on. Obviously, if there were no exceptions to the mathematical operation of this rule, the no. 8 man on the list would be the lowest one who could receive the fourth appointment, in view of the provision in the act that any names which have been presented three times and not selected must be stricken from the list. But section 14 of the act also provides that the appointing authority, whenever a

list of eligibles is presented to him, may object to one or more of the persons named on the list for any one of the number of reasons set forth in section 10 of the act, and if the commission sustains the objection, the name or names shall be stricken from the list and the other eligibles advanced in numerical position accordingly. There are also other ways in which the list may be depleted. Death or declination of appointments, to mention two which come to mind, with a corresponding accelerating of position on the list for those bearing lower numbers when the list was compiled. It is apparent, therefore, that a consideration of the primary mathematics of the situation 20 years after the event does not demonstrate that the original appointment was not made in strict conformity with the civil service law.

The court is required to assume that the civil service commission acted in good faith until the contrary is clearly shown: Glesenkamp v. Pittsburgh et al. 320 Pa. 219.

The return pleads no other action or failure on the part of the civil service commission or any officers of the City of Scranton in connection with plaintiff's original appointment as a reserve patrolman which indicates illegality. The return, therefore, is insufficient to create an issue of fact as to the propriety of plaintiff's original commission.

The return challenges plaintiff's appointment to position of regular patrolman, Grade 1. Again, on the theory that since plaintiff was no. 2 on the eligible list for appointment as regular patrolman but was in fact the 13th number in grade A on this list to be appointed, the mathematical requirements of the situation would make this appointment invalid because his name should have been dropped after he was passed over three times. The Scranton Civil Service Commission in its rules for promotion has provided that the conduct of examinations and making selections for promotion from any eligible list, formed as the result

of such examination, shall be governed by its rules relating to original appointment, and in rule 11, sec. 1, of the rules of the commission, with reference to eligibility lists and the certification of eligibles to the appointing officer, we find this:

". . . No such name shall be certified more than three times to the same appointing officer for the same or a similar position unless at such officer's request."

The return does not plead any irregularity with reference to the placing of plaintiff's name on the eligible list for promotion to regular patrolman, nor is there any more reason here to believe that the appointing officers or the civil service commission violated their duty with reference to this appointment than there is to believe that they violated their respective duties as to the original appointment to reserve patrolman. The appointing officer could well, under the rules of the civil service commission, have requested the restoration of plaintiff's name to the list after passing him over for a number of other eligibles, and under the rule of the Glesenkamp case, supra, we are obliged to assume that the officials responsible for this appointment acted in good faith, unless the contrary is clearly shown. There is nothing in this pleading which sets forth with reasonable particularity the lack of good faith or any irregularity of action on the part of either the civil service commission or of the appointing authority so far as the promotion of plaintiff to grade 1 is concerned.

The return consists largely of argumentative inferences and does not in any manner present distinct issues of fact. It is, therefore, insufficient to prevent judgment on the demurrer.

". . . the facts relied on to justify the refusal to obey the mandate of a writ must be clearly and specifically set forth with sufficient certainty, and not argumentatively, inferentially, or evasively, so that the court may see at once that such facts, if established or ad-

mitted, are sufficient as the alternative for obedience to the writ.": Commonwealth ex rel. v. Allegheny County, 37 Pa. 277, 279.

See also Seltzer v. Reading et al., 340 Pa. 573.

As this return does not, in our opinion, set up a legal defense to plaintiff's averments as to the regularity of the appointments as reserve patrolman and as regular patrolman, the validity of his subsequent promotions up to and including the grade of captain of police is established. Since his removal from the position of captain is clearly in violation of the prescribed procedure, the demurrer must be sustained and the peremptory writ issued as prayed for.

In the view we have taken of the matter, we believe that the demurrer may be sustained alone on the ground of the regularity of plaintiff's civil service status from the beginning. It, therefore, becomes unnecessary to consider whether or not this status was either established or confirmed by the Act of June 3, 1943, P. L. 826, 53 PS §10771, and particularly section 4, which purported to stabilize as of the date of the passage of the act the civil service status of all municipal employes of cities of the second class A then on the roster of the civil service commission. The constitutionality of the act is challenged by defendant as contrary to article III, sec. 3, of the Constitution of Pennsylvania for defective notice in its title. The title of the Act of 1943 designates it as a supplement to the Civil Service Act of 1907, supra. The title of the Act of 1907 is repeated in the title to the Act of 1943 and contains this opening phrase:

"An Act to regulate and improve the civil service of the cities of the second-class in the Commonwealth of Pennsylvania . . .," and the purpose of the supplement is stated in the title to the Act of 1943 as follows: "Providing for and regulating dismissal of certain employes under civil service in cities of the second class A. . . ."

Section 4 of the act certainly is an effort to regulate the dismissal of employes, except in conformity with the requirements of the Civil Service Act, and a person of a reasonably inquiring state of mind reading the title of the act, it seems to us, would have notice of its subject matter. While, as pointed out above, we think it is unnecessary to decide this question, under the principles expressed in Gumpert's Estate, 343 Pa. 405, sufficient notice is given in the title of the subject-matter of the act and it cannot be considered unconstitutional as a violation of article III, sec. 3.

Now, December 18, 1946, the demurrer to the return and amended return filed by defendants is sustained. Let the peremptory writ issue as prayed for.