JANVIER, Judge.
In this suit for a declaratory judgment, brought under the provisions of Act No. 22 of 1948, Ex.Sess., LSA-RS 13:4231 et seq., the City Civil Service Commission of the City of New Orleans seeks a judgment fixing the civil service status of four employees in the office of the Permit Department of the City.
The respondents are the four employees in question and deLesseps S. Morrison, Mayor and Commissioner of the Department of Public Affairs.
The four employees were appointed to their various positions by the Mayor without compliance with the conditions and limitations of the Civil Service Law, Act No. 171 of 1940, as amended, LSA-RS 33:2391 et seq., under the assumption that the positions to which they were appointed were in the “unclassified service.”
In the Civil District Court for the Parish of Orleans there was judgment declaring that the said positions are in the classified service and -that consequently, since the said employees were appointed without compliance with the civil service requirements, they are not vested with valid title to their respective positions and that consequently the said positions are vacant.
From the judgment, the Mayor and the four employees have appealed.
At the time of the filing of the original petition, the City Civil Service Commission was composed of Herman L. Barnett, Joseph W. Montgomery and Edward D. Rapier. Joseph W. Montgomery has since been replaced by George Reyer who, on proper motion, has been substituted.
It is conceded that the question of whether the four positions are classified or unclassified has been, settled by the decision of the Supreme Court in what is known and will be hereafter referred to as the Murtagh case, State ex rel. Murtagh v. Department of City Civil Service, 215 La. 1007, 42 So.2d 65; and that consequently there is no longer any doubt on the subject — the positions held are within the classified service.
*417 A clear understanding of the chronological sequence of events is necessary to an understanding of the contentions of the respondents.
It is contended by respondents that, since the four employees were appointed in the bona fide belief that the respective positions were unclassified and at a time when the Civil Service Commission had not set up the process for the filling of these particular positions under the Civil Service Law, these employees should be permitted to retain their present positions.
Prior to the appointment of any one of the four employees there was a disagreement between the Mayor, on the one hand, and the Commissioners, on the other, over the question of whether such positions in the Permit Department were or were not within the classified service. On February 23rd, 1946, the office of the City Attorney advised the Mayor in writing that the positions were unclassified. The Civil Service Commission held a contrary opinion, and after obtaining legal advice otherwise than from the City Attorney, the Commission issued an opinion on April 29th, 1946, to the effect that such positions were within the classified service. It is interesting to note, however, that the Commission did not set up the necessary procedure for the filling of any such positions.
Two of the employees, now involved in this controversy, were appointed while the Mayor and the Commission held these two opposing views. George Watts Hymes was appointed on September 9th, 1946 and Andrew Louis Burthe was appointed on September 20th, 1946. The Murtagh controversy then arose in the Commission and the Commission reversed its former ruling, and, on January 25th, 1947, issued an opinion in the Murtagh case which in effect held that all such positions in the Permit Department were unclassified.
The two other employees involved in this controversy were appointed after this ruling — Allen Paul Parr, on March 16th, 1947, and Henry Frank Rittiner, on July 16th, 1947. Thus the two last named employees were appointed by the Mayor while he and the Commission were united in the opinion that such positions were unclassified, and that accordingly they might be filled by the Mayor without regard to civil service regulations.
For the purposes of this case we do not see that a distinction should be made between the cases of the two employees who were appointed in 1946 while there was a disagreement between the Mayor and the Commission and the cases of the other two who were appointed in 1947 after the Mayor and the Commission had come to an agreement that such positions were unclassified. We say this not only because of the ultimate conclusion which we have reached and which makes a decision on this point unnecessary, but for the reason that even if, at the time of the appointment of the two who were first appointed, the Commission could have contended that there was not good faith in the making of the appointment, that contention could no longer be made after the Commission changed its opinion while those two were still holding the positions to which they had been appointed earlier.
We shall then treat all four employees as being in the same category, that is, we shall treat them all as having been appointed to positions believed by both the Mayor and the Commission to be unclassified and for the filling of which positions no machinery or procedure was set up by the Commission.
When the Supreme Court decided the Murtagh case on March 21st, 1949, and on rehearing, on June 30th, 1949, it became apparent that both the Mayor and the Commission were wrong in their views that the positions were in the unclassified service and that all such positions were classified and should be filled under civil service regulations. It is argued by the respondents that, since at the time of the respective appointments of the four employees they were thought to be in the unclassified service, and since no procedure was set up by the Commission' for the filling of those positions by civil service examination, there was mo way in which the positions could .’have been filled except by appointment by the Mayor without following civil service requirements.
*418 It is argued that it would be most unjust to say to these men, though they were originally appointed in the only way available for the filling of those positions, that their occupancy thereof has been rendered illegal because of the decision in the Mur-tagh case and that they must be let out of the service.
Counsel for the Mayor and the four other respondents place great reliance upon R.S. 33:2405, which was section 15 of Act No. 171 of 1940, the Civil Service Statute, and which section reads as follows: “When any position is first allocated hereunder, or is reallocated to a different class to correct an error in its previous allocation, the employee in the position may continue to serve therein, with the status and all the rights and privileges he would have had under this Part if he had been originally appointed by competitive examination and certification hereunder to a position of the class to which the position has been allocated or reallocated, but the employee may be transferred or promoted without further tests of fitness or certification, to any position of the class to which the position previously was allocated while held by him, or his name may be placed on the reemployment list for the class.”
We are of the opinion that that section has no application to such a situation as is presented here. The purpose of that section is to protect in civil service status an employee who, within the service, has been allocated to a class or grade different from that into which he should have ■been put. It surely was not the purpose of the framers of the statute to freeze in civil service status and thereby protect an employee incorrectly or illegally employed, in violation of civil service regulations.
And it is our view that, as a result of the Murtagh decision, the four employees in question must be held to have been illegally employed. The necessary result of that decision is that all such employees appointed in the Permit Department since the Civil Service Act became effective, have always been subject to civil service requirements. True enough this was not known until that case was decided, but it cannot be said that that decision created the civil service classification into which those employments fell. The statute itself did that. All that the decision did was: to recognize and to declare the existence of a situation which had existed since the enactment of the statute but of which the interested persons were unaware.
Counsel for respondents cite McQuillin,. Municipal Corporations, Third Edition, section 12:134, Reclassification of Offices and Employments, and they quote the following: “Reclassification of various offices and employments in the municipal’ government is frequently made, as where positions not formerly subject to civil service are classified within the civil service, or positions in a noncompetitive class are placed within the competitive class. Reclassification does not necessarily create vacancies in positions held at the time of reclassification, and the incumbents may be entitled to remain in their positions. Present incumbents may or may not be required to submit to examination in order to qualify for continuance in their employment, depending upon the terms of the law or the rules promulgated by the commission. Provision frequently is made for the blanketing into the civil service, without examination, of persons employed prior to. the enactment of a civil service law. Even where examinations are required of them, considerable credit may be allowed on the ground of experience. The action of a civil service commission with respect to. reclassification will not be disturbed by the courts where it did not act illegally or arbitrarily.”
 In the cases on which the above quotation is based there were apparently involved situations in which the commissions or boards had authority to classify certain positions as within or without the civil service. When such a commission or board classifies a position as without the civil service and then the position is filled and the commission or board later changes-the classification, all that Mr. McQuillin says is that once those positions originally classified as not subject to civil service have been filled, the persons employed have *419 the right to retain the positions after the commission or board has changed the classification and has required that persons filling such positions be in the classified service. Reference to the various cases cited in the note under the above quoted statement shows that in each of them the Commission had the power to make the change. It was not the law itself which classified the employment.
In State ex rel. Cooper v. City of Seattle, 199 Wash. 568, 92 P.2d 249, the question involved was whether the City Civil Service Commission had the power to reclassify positions, not whether the law itself did so.
In Glesenkamp v. City of Pittsburgh, 320 Pa. 219, 181 A. 763, it was stated that the courts, in passing on such acts of a Commission, must determine whether the Commission had the power to effect such reclassification. The same may be said of Carr v. Kern, 279 N.Y. 42, 17 N.E.2d 762.
Under the Louisiana statute, the Civil Service Commission has no authority to decide who is within and who is without the service. The law itself determines that. The Commission merely interprets the law and enforces it as it believes it should be interpreted, subject, of course, to a final decision by the courts as to whether any particular position is within or without the purview of civil service. For instance, if here the Commission had the legal right to place those employees in unclassified status and did so and then later had the legal right to place them within the classified service and attempted to do so, the rule quoted by Mr. McQuillin would be applicable and might have protected them in their positions.
Counsel for respondents cite several cases as authority for the view that an employee in office is always protected in his position. We do not think that those cases are authority for that view and believe that they are merely authority for the view that if an employee is legally in office, he is protected. The original appointment, however, must be legal.
In Jampol v. Finegan, 167 Misc. 823, 4 N.Y.S.2d 825, the Civil Service Commission itself had placed certain officers in the “exempt” class. The Commission itself later made these officers subject to civil service requirements. Those who had been appointed when the positions were in the exempt class were held to have been “legally” appointed and, accordingly, they were protected in these positions. The same may be said of Sandford v. Finegan, 276 N.Y. 70, 11 N.E.2d 356. And Fornara v. Schroeder, 261 N.Y. 363, 185 N.E. 498, 499, appears the following: “When the position which petitioner held in the bureau of street cleaning in the exempt class was reclassified in the competitive class, petitioner’s tenure was not affected. He was not classified out of office. He was transferred along with his position ‘without examination.’ ”
We repeat that the reclassification was done not by the law but by the Commission itself.
In Kessler v. City of Seattle, 93 Wash. 192, 160 P. 423, certain appointments were made before the charter of the City of Seattle was changed so as to require civil service status of certain employments. Later the charter was changed but it was provided that “thereafter” such positions should -be filled under civil service regulations. The Court held that the original appointments had been legal and that therefore the employees were entitled to retain their respective positions. In fact, that was the exact situation which was found in the Murtagh case. Murtagh was an employee in the Permit Division of the City and it was held that the position was “classified”, but he was protected in his tenure because it was found that he had been in the service at the time when the Civil Service Law went into effect and that he was, therefore, “frozen” in office by section 11 of the act, No. 171 of 1940 which provides: “Every person who, on the first day of July, 1942, is legally occupying, by permanent appointment thereto, a position placed by this Act in the classified service, shall be entitled to continue to occupy such position, without further tests of fitness for such employment, and shall become subject to the provisions of this Act *
*420 The four employees with whom we are concerned were not in service when the law became' effective. They were appointed later. Consequently, since, as a result of the Murtagh decision, each position held by any one of the four is “classified”, no one of the employees could have been “legally” appointed by the Mayor.
It is regrettable that the employees in the case at bar will probably be required to forfeit their employments, but in our opinion the application of the civil service requirements makes no other result possible.
Accordingly, the judgment appealed from is affirmed at the cost of appellants.
Affirmed.